# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 4, 2013

Lyle W. Cayce
Clerk

No. 13-30357
Summary Calendar

CLARENCE STOKES,

Plaintiff–Appellant

v.

ATLANTIC SOUNDING COMPANY, INCORPORATED; WEEKS MARINE, INCORPORATED,

Defendants–Appellees

---------------------------------------------------------------------------------------------------------------

WEEKS MARINE, INCORPORATED; ATLANTIC SOUNDING COMPANY, INCORPORATED,

Plaintiffs—Appellees

v.

CLARENCE STOKES,

Defendant—Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CV-2366

Before REAVLEY, JONES, and PRADO, Circuit Judges.

PER CURIAM:*

---

*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.*

No. 13-30357

Plaintiff–Appellant Clarence Stokes ("Stokes") appeals the district court's dismissal of his claims against Defendants–Appellees Atlantic Sounding Company, Inc. ("Atlantic Sounding") and Weeks Marine, Inc. ("Weeks Marine") following a bench trial.  At issue is whether the district court erred in concluding that Stokes failed to show that he had sustained an injury necessary to make out his claims for (1) unseaworthiness, (2) maintenance and cure, and (3) negligence under the Jones Act, 42 U.S.C. § 30104, and the general maritime and admiralty law. For the reasons below, we affirm.

## I. FACTS

Stokes was an employee of Atlantic Sounding.  Weeks Marine owns and operates a dredge vessel named the *Capt Frank* to which Stokes was assigned.  On his application for employment with Atlantic Sounding, Stokes omitted any mention of a previous employment with TODCO during which he suffered an accident and received a settlement, despite the fact that the application asked specific questions regarding previous accidents.

On April 18, 2011, employees aboard the *Capt Frank* found Stokes calling for help after an apparent fall from a ladder.  Stokes was taken to Terrebonne General Medical Center where he was initially seen by Dr. Owen Grossman.  Upon his initial examination, Dr. Grossman found no bruises, abrasion, or lacerations—typical indicators of a fall.  After more extensive testing, the medical team at Terrebonne General Medical Center was unable to discern the cause of Stokes's pain and determined that Stokes was probably malingering.

The Terrebonne medical team recommended and arranged to transfer Stokes to East Jefferson General Hospital in New Orleans so that he could undergo inpatient psychiatric treatment to further investigate the malingering.  Stokes refused this recommendation and instead was admitted to Forest General Hospital in Hattiesburg, Mississippi on April 27, 2011.

No. 13-30357

Doctors again were unable to find any physical explanation for Stokes's claim of pain. Upon his discharge, doctors recommended Stokes see an orthopedist and a psychiatrist. Stokes failed to comply with the recommendation and did not follow up on his treatment until September 12, 2011. On this date, in preparation for the present litigation and on the advice of his attorney, Stokes saw Dr. Troy Beaucoundray, a neurologist and interventional pain management specialist. In addition, at the behest of the defendants, Stokes was seen by psychiatrist Dr. Rennie Culver.

On December 21, 2011, Stokes brought a lawsuit against Atlantic Sounding and Weeks Marine in the United States District Court for the Eastern District of Louisiana. Stokes contended that Atlantic Sounding and Weeks Marine were liable for his injuries under negligence principles and that he was entitled to maintenance and cure. Following a scheduling conference and the completion of discovery, the matter proceeded to a bench trial.

At trial, several of the doctors who had cared for Stokes after his alleged accident testified that they had been unable to identify the cause of his pain and that they could not rule out malingering or conversion. Dr. Culver, the only psychiatrist to see Stokes prior to trial, testified that he believed Stokes was malingering. Dr. Beaucoundray was the only testifying doctor to state that, more likely than not, an event on April 18, 2011 had caused Stokes's pain. However, Dr. Beaucoundray could not say with certainty that the pain was a result of a fall from a ladder. He also made clear that at the time he was treating Stokes, he was unaware of Stokes's earlier injury while employed with TODCO in 2006. In addition, Dr. Beaucoundray stated that he would have liked to see Stokes be more committed to his prescribed physical therapy.

In its oral reasons for judgment, the trial court identified four issues in the case: (1) whether Stokes actually had an accident or whether he falsified the event itself; (2) assuming that he indeed fell from a ladder, whether Stokes

3

No. 13-30357

was injured on April 18, 2011; (3) the extent of Stokes's injuries and resulting damages; and (4) whether Stokes's failure to disclose past injuries barred recovery for maintenance and cure under *McCorpen v. Central Gulf Steamship Corporation*, 396 F.2d 547, 548–49 (5th Cir. 1968). After acknowledging the issues, the court determined that the second issue was dispositive. The trial judge weighed the opinions of the doctors' testimony and ruled that Stokes could not satisfy his burden of proof in showing that he sustained an injury on April 18, 2011. In an abundance of caution, the district court also analyzed the other issues and found that even were it to address them, it would still dismiss Stokes's claim. The district court entered a judgment in favor of Appellees on April 8, 2013 and dismissed Stokes's claims with prejudice. Stokes filed a notice of appeal on the same day.

Stokes raises four issues on appeal. He argues that the district court erred when it concluded: (1) he was not entitled to maintenance and cure because he willfully rejected recommended medical care; (2) no accident took place on April 18th, 2011, despite overwhelming evidence to the contrary; (3) Atlantic Sounding and Weeks Marine were not negligent under the Jones Act and that the vessel was seaworthy even though several witnesses testified that the ladder from which the plaintiff fell was improperly secured; and (4) no claim to punitive damages existed.

## II. DISCUSSION

In a bench-tried admiralty case, a district court's rulings concerning negligence and causation are findings of fact, and are reviewed only for clear error. *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 376 (5th Cir. 2012). We must also give "due regard to the trial court's opportunity to judge the witnesses' credibility." *Id.* (quoting Fed. R. Civ. P. 52(a)(6)) (internal quotation marks omitted). We may not find clear error if the district court's

4

finding of fact is plausible in light of the record as a whole, even if the Court would have weighed the evidence differently. *Id.*

Stokes contends that the district court ruled against him in the face of clear evidence that an injury occurred on this date. To support this contention, he claims that the testimony of Dr. Culver should be given little to no weight and that the testimony of Dr. Beaucoundray should be given more. He cites *Fontenot v. Wal-Mart*, 08-158 (La. App. 3 Cir. 3/4/09); 5 So. 3d 298, a case in which a state appellate court discounted Dr. Culver's testimony because he was not a treating physician and was used only to examine the plaintiff for trial purposes. *Id.* at 307. We are not bound by the state appellate court's determination, but, even if we were, we would still find this case distinguishable. In *Fontenot*, the appellate court excoriated the trial court for relying principally on Dr. Culver's opinion formed on scant interactions with the patient and only in preparation for the trial. *See id.* at 303 (describing how Dr. Culver met with patient for less than two hours and failed to review pertinent records). Here, however, the district court weighed the opinions of all of the physicians that treated Stokes, including those of Dr. Beaucoundray and Dr. Culver. The trial judge stated, "Though Dr. Culver's analysis might seem dispositive, the Court further carefully evaluated Dr. Troy Beaucoundray's testimony." Therefore, we are not inclined to find clear error in this case simply because of the state appellate court's determination about Dr. Culver's competence and credibility in a different case that is factually distinct.

There is no evidence that the district court's findings of fact were implausible in light of the record as a whole. *See Manderson*, 666 F.3d at 373. There is no evidence to lead to such a determination. The district court was apprised that questions of malingering arose early in Stokes's treatment and continued throughout his care at several different hospitals. Only Dr.

No. 13-30357

Beaucoundray, a physician sought at the direction of Stokes's attorney, testified that he believed that more likely than not "something" occurred on April 18, 2011 that led to Stokes pain.  However, even he could not say with any medical certainty that the pain was the result of a fall from a ladder.

Giving due regard to the district court's opportunity and competence in weighing the witnesses in a bench trial, we cannot conclude that the district court erred in finding that Stokes had not proven that an event on April 18 caused his injury.  Because we agree with the district court that this issue is dispositive of all Stokes's claims, we affirm on this ground and need not reach the other issues Stokes raised.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.